JAMES P. DACEY & another *vs.* MILK CONTROL COMMISSION.

Suffolk.    December 8, 1959. — April 11, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Milk. Regulation. State Administrative Procedure Act. Administrative Matter. Moot Question.*

The validity of an order by the milk control commission requiring dealers to furnish cost data for the purposes of a review of a previous price fixing order became a moot question where the price fixing order had ceased to be operative. [683, 685]

An order by the milk control commission requiring dealers to furnish cost data for the purposes of a review of a previous price fixing order was a type of order which might be adopted as an emergency order without notice or hearing pursuant to § 2 (3) of the State administrative procedure act, G. L. c. 30A. [684]

Where, following an order by the Governor under G. L. c. 94A, § 12, to the milk control commission by telegram to review a previous price

fixing order, the commission without notice or hearing promulgated under § 2 (3) of the State administrative procedure act, G. L. c. 30A, an order requiring dealers to furnish cost data for the purposes of the review and found that the immediate adoption of its order was "necessary for the preservation of the public health, safety or general welfare," and that "observance of the requirements of notice and public hearing would be contrary to the public interest," for the stated reasons that an observance of such requirements would unduly delay the review and prevent "proper and expeditious administration of the law," there was compliance with the formal requirements of c. 30A, § 2 (3) in adopting such emergency order, and it could not be said that the adoption of that order was arbitrary, capricious, or an abuse of discretion within c. 30A, § 14 (8) (g). [684–685]

PETITION for review, filed in the Superior Court on December 17, 1958.

The petitioner and an intervener appealed from a decree entered by *Thompson*, J.

*James C. Gahan, Jr.,* (*Paul A. Kelley* with him,) for the petitioner and the intervener.

*Bernard N. Abrams,* Special Assistant Attorney General, for Milk Control Commission.

SPALDING, J. This is a companion case to *Cumberland Farms, Inc.* v. *Milk Control Commn., ante,* page 672.

On August 11, 1958, the commission, after notice and hearing, adopted official order G17–450 which required each milk dealer selling milk in marketing area 17 to file reports on prescribed forms setting forth cost data for certain periods. The information so furnished, after analysis by a firm of public accountants, was introduced in evidence at the hearings which led to the promulgation by the commission on November 17 of the price fixing order G17–505 discussed in the *Cumberland Farms* case.

On November 20, 1958, the Governor under G. L. c. 94A, § 12, ordered the commission by telegram to review order G17–505. The commission, being in doubt as to the nature and scope of such a review, requested an opinion from the Attorney General, who advised them, among other things, that a review was "a separate proceeding." Thereafter, on December 1, the commission voted to gather the necessary material for the "review" of G17–505, and on December 8

promulgated amendment 1 to official order G17–450 (the order of August 11 requiring the cost data reports). Amendment 1, like the earlier order, required the milk dealers in marketing area 17 to report certain cost data. It was adopted without notice and hearing.

The petitioner, James P. Dacey, claiming to be aggrieved by amendment 1, brought this petition for review under G. L. c. 94A, § 21. Cumberland Farms, Inc., which also was affected by the amendment, was allowed to intervene. The case was heard on the pleadings together with certain documentary evidence showing the action taken by the commission. There apparently was no oral evidence and the judge made no findings of fact. A decree was entered adjudging that amendment 1 was adopted and promulgated in accordance with law. The petitioner and the intervener appealed. The case comes here on the pleadings, the decree, and the documentary evidence, including the amendment.

The basis of the appeal is that amendment 1 was invalid. Inasmuch as the amendment was adopted in connection with a review of order G17–505 which, as we held in the *Cumberland Farms* case, *ante,* is no longer operative, we could very well decline to deal with the amendment on the ground that the questions concerning it are moot. But, as in the *Cumberland Farms* case, since the questions are of importance and have been fully argued, we shall proceed to indicate our views. See *Vautier, petitioner, ante,* 341, 344–345. Moreover, there is a suggestion in the briefs that sanctions may be imposed against the intervener because of its alleged noncompliance with the amendment. See §§ 6 and 22.

Since the amendment was adopted without notice and hearing (see G. L. c. 94A, §§ 16 [b] and 17 [a]), the commission seeks to justify its adoption in this manner under G. L. c. 30A, § 2 (3) (the State administrative procedure act), which provides in part, "If the agency finds that immediate adoption or amendment of a regulation is necessary for the preservation of the public health, safety or general welfare, and that observance of the requirements of notice

and public hearing would be contrary to the public interest, the agency may dispense with such requirements and adopt the regulation or amendment as an emergency regulation or amendment. The agency's finding and a brief statement of the reasons for its finding shall be incorporated in the emergency regulation or amendment . . . ."

Contrary to the intervener's contention, we are of opinion that amendment 1 is a type of order that falls within § 2 (3), for that section prescribes the procedure for the "amendment of *any* regulation as to which a hearing is required by any law . . ."[1] (emphasis supplied). See 1954 Annual Survey of Mass. Law, 126, 131. And we are of opinion that the information which the amendment was designed to obtain was not irrelevant to the establishment of minimum wholesale and retail prices of milk. Section 10 gives to the commission very broad powers with respect to what it may consider in establishing minimum prices. It shall ascertain "by such examination or investigation as the situation may permit or warrant" what prices will be most beneficial to the public interest and will best protect the milk industry. And in every such examination or investigation the commission "shall take into consideration all the conditions affecting the milk industry, including the amount necessary to yield a reasonable return to the producer and to the milk dealer."

Thus, the question narrows down to whether the amendment was adopted in conformity with the requirements of § 2 (3). We are of opinion that it was. The commission found, as required by § 2 (3), that the immediate adoption of the amendment was "necessary for the preservation of the public health, safety or general welfare," and that the "observance of the requirements of notice and public hearing would be contrary to the public interest." The commission stated as reasons for these findings that if the re-

---

[1] The intervener's contention is founded on the provision in § 2 (3) that "[a]n emergency regulation or amendment shall not remain in effect for longer than three months unless during that time the agency gives notice and holds a public hearing as required in this section." It is argued that this indicates that the emergency provision was intended to apply only to amendments of a continuing nature and not to one, as here, relating to a single event.

quirements of notice and hearing were to be observed (1) the review would be unduly delayed and (2) the proper and expeditious administration of the law would be prevented. These findings satisfy the formal requirements of § 2 (3) and are sufficient to support the order unless it can be said to be erroneous for any of the grounds enumerated in G. L. c. 30A, § 14 (8), which by reason of c. 94A, § 21, determine the standards of review in a case of this sort. The petitioner's and the intervener's attack on the amendment appears to be based on ground (g) of § 14 (8) which provides that the court may set aside a decision of an administrative agency upon the court's determination that substantial rights of a party have been prejudiced by reason of a decision which is "[a]rbitrary or capricious" or "an abuse of discretion." More specifically, they urge that there was no basis for the commission's finding that the immediate adoption of the amendment was necessary for the preservation of the public health, safety or general welfare. There can be little doubt that the price fixing order G17–505 concerned the public welfare. On the basis of the record before us, taking into consideration the urgency imported by the Governor's telegram ordering a review of G17–505, we cannot say that the commission's finding that an immediate adoption of the amendment was necessary for the general welfare was arbitrary, capricious, or an abuse of discretion; the amendment was designed to furnish the commission with data reasonably relevant to its review.

The decree affirming the action of the commission is reversed, not on the merits, but because the original order sought to be reviewed has become moot. The case is remanded to the Superior Court with directions to dismiss the petition. See *Vigoda* v. *Superintendent of Boston State Hosp.* 336 Mass. 724, 726–727.

*So ordered.*