WILLIAM R. CLIFF *vs.* BOARD OF HEALTH OF AMESBURY (and a companion case between the same parties).

Essex.     May 4, 1961. — June 20, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & SPIEGEL, JJ.

*Trailer Coach Park. Health, Board of. Regulation. License. Certiorari.*

Certiorari did not lie to quash a decision of a licensing board where another method of judicial review of the decision was expressly provided by statute.   [60]

The power granted to a municipal board of health by G. L. c. 140, § 32B,

to adopt regulations governing trailer coach parks is not confined to health regulations.   [62]

Where a municipal board of health, acting in good faith under G. L. c. 140, § 32B, adopted an amendment of its regulations pertaining to trailer coach parks after the filing of an application for a trailer coach park license, the application was governed by the amendment.   [62]

An appeal under G. L. c. 140, § 32K, from a decision of a municipal board of health denying a landowner's application for a trailer coach park license for the reason that the supply of water thereto would be inadequate and might create a health problem was properly dismissed where evidence reported supported the trial judge's finding that there was "a shortage of water."   [62–63]

A municipal board of health is not obliged by G. L. c. 140, § 32H, to grant a trailer coach park license after approval of the proposed setup by the State department of public health.   [63]

BILL IN EQUITY, filed in the Superior Court on February 1, 1960.

PETITION for a writ of certiorari, filed in the Superior Court on February 1, 1960.

The suit in equity was heard by *Forte*, J.   The certiorari proceeding was heard by *Thompson*, J., on demurrer.

*Louis A. Cyr,* (*Edward M. Dangel & Leo E. Sherry* with him,) for Cliff.

*Edward M. Conley,* Town Counsel, for the board of health of Amesbury.

SPIEGEL, J.   On September 11, 1959, the plaintiff filed an application with the board of health of the town of Amesbury for a license to construct and operate a trailer coach park under the provisions of G. L. c. 140, §§ 32B[1] and 32H.[2]   The application was denied by the defendant board. The plaintiff appealed from the decision to the Superior

---

[1] "The board of health of any city or town, in each instance after a hearing . . . may grant, and may suspend or revoke, licenses for . . . trailer coach parks located within such city or town . . . ."

[2] "An applicant for a license under section thirty-two B for a trailer coach park which has not been equipped with the buildings, structures, fixtures and facilities necessary to conduct a trailer coach park, shall file with the board a plan showing the buildings, structures, fixtures and facilities, and in general the proposed setup which he plans to have upon said premises if and when the license may issue, together with an itemized estimate of the cost of the same, and thereupon the board, with the approval of the state department of public health, shall grant a trailer coach park license upon the condition that such license shall issue upon the completion of the premises according to the plans and estimate submitted, providing that the proposed trailer coach park will be in compliance with all applicable laws, ordinances, rules and regulations. . . ."

Court pursuant to G. L. c. 140, § 32K, and filed a petition for a writ of certiorari in the Superior Court. The trial judge entered a final decree dismissing the appeal and an order sustaining a demurrer to the petition for a writ of certiorari, from which the plaintiff appealed to this court. The evidence in the equity action was reported.

General Laws c. 140, § 32K, provides that "Any person aggrieved by any act, rule, order or decision of the licensing board, *may appeal to the superior court* . . ." (emphasis supplied).

The demurrer to the petition for a writ of certiorari was properly sustained. The statute expressly provides for an appeal to the Superior Court which was duly taken. There was no occasion for the extraordinary writ which issues when no other adequate remedy is available. *Fino* v. *Municipal Court of the City of Boston,* 326 Mass. 277, 279. *Gifford* v. *Commissioner of Pub. Health,* 328 Mass. 608. *Massachusetts Feather Co.* v. *Aldermen of Chelsea,* 331 Mass. 527, 530.

The plaintiff is the owner of a parcel of land in Amesbury on which he proposed to install a trailer park for a maximum of 108 trailers with permanent installations of a sewerage disposal system, toilets connected with the system, water to each trailer, and lighting. He intended to cater not to trailer owners who would "come for one night, a week or a month" but rather to "permanent" trailer owners.

The plaintiff spoke to one Frisbee, a member of the board of health of the town, to ascertain what had to be done to establish a trailer park. Frisbee told the plaintiff that he would have to apply for a license, comply with the rules and regulations of the board of health, and hire surveyors to make land tests, and "it would have to pass the State board [of health]." As a result of this conversation the plaintiff had plans drawn and land tests made.

Sometime in August, 1959, the plaintiff, through his engineer, submitted plans to the department of public health of the Commonwealth on the advice of Frisbee. Frisbee

wrote a letter to the State board informing it that he had so advised the plaintiff and requesting the State board to communicate with him to discuss the matter further.

On September 11, 1959, the plaintiff filed an application with the board of health of Amesbury to "construct and operate a trailer coach park at Kimball Road, Amesbury, Massachusetts under provisions of § 32H, G. L. c. 140 and § 32B." On September 24, 1959, the board amended its regulations so that they would apply not only to any "organized camp . . . covered by chapter 416 of the Acts of 1939" but would also apply to all installations now covered by G. L. c. 140, §§ 32A–32L, inclusive. The board also added the following § 15: "It shall be unlawful to remain or live in any tourist camp or trailer coach park for more than ninety (90) days in any six months period, excepting, of course, bonafide employees, or upon special permit issued by the Board of Health."

The State department of public health notified the Amesbury board that it had approved plans submitted by the plaintiff titled "Proposed Sewage Disposal for Amesbury Mobile Homes . . . ."

The Amesbury board of health held a hearing on the plaintiff's application on December 2, 1959, at which time the plaintiff filed with the Amesbury board the plans which had been previously filed with the State board. There were a number of objectors at the hearing including several abutters. These abutters objected to this park "because of the lack of water." After the hearing the public works department engineer of Amesbury made a study of the water problem. He found that there was not sufficient water.

At a meeting of the Amesbury board of health held January 20, 1960, the board voted[3] to deny the application and the plaintiff was so notified by letter January 21, 1960.

---

[3] "Voted: That the application . . . be denied for various reasons, the principal ones being that . . . the supply of water is so inadequate for the size of the park planned . . . that a health problem might be created no matter how well the installation was conducted; . . . that the installation . . . in addition to being a circumvention of the sub-division control law, would be in violation of the letter and spirit of the regulations of the Board of Health which contemplates and permits trailer coach parks for occupancy by temporary residents and that the installation of a trailer coach park in the

The trial judge ruled that the appeal be dismissed and found "no evidence of bad faith on the part of the defendants . . . that there is a shortage of water, at least at the present time . . . that the plan that was submitted for approval for the Department of Public Health was submitted by the plaintiff personally and not by the defendants . . . that the plaintiff did not file said plan with the Board, with the defendants, and in turn have the defendants submit it to the State Department [of Public Health] for approval." The trial judge further ruled that "as long as they [the defendants] acted in good faith, they can change the rules and regulations at any time before any licenses are issued . . . ." The testimony supports the trial judge's findings and the findings support the rulings. There was no error.

Trailers are subject to regulation under the police power. G. L. c. 140, §§ 32A–32L. *Granby* v. *Landry,* 341 Mass. 443, 446. Cases collected in 22 A. L. R. 2d 774, 780–782. The power granted to the Amesbury board of health by G. L. c. 140, § 32B, to adopt rules to regulate trailers is not limited to health regulations. *Gillam* v. *Board of Health of Saugus,* 327 Mass. 621, 623. Section 32B provides that "The board of health of a city or town may adopt, and from time to time alter or amend, rules and regulations to enforce this section in such city or town." The defendant board had a right to amend the regulations. See *Gillam* v. *Board of Health of Saugus, supra,* at page 622.

The Amesbury board of health concluded that a health problem might be created if a license for a 108 unit trailer coach park was issued in an area where some permanent residents of the town were not presently receiving an adequate supply of water. A refusal to grant a license in such circumstances is not arbitrary or capricious. See *Cotter* v. *Chelsea,* 329 Mass. 314, 318; *Butler* v. *East Bridgewater,* 330 Mass. 33, 38; *New Bedford* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*

location was opposed by the abutters, the Board of Selectmen, the Planning Board, the Amesbury Housing Authority, and also by a large number of citizens of the Town."

330 Mass. 422, 433; *Dacey* v. *Milk Control Commn.* 340 Mass. 681, 685.

In the case of *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph,* 340 Mass. 149, cited by the plaintiff, it was held that a planning board did not have authority to act under G. L. c. 41, § 81M, on the ground of an inadequate water supply. The case is not applicable to the present one where the board of health determined that the inadequate water supply might result in a health problem.

A careful reading of G. L. c. 140, § 32H, reveals that it is not mandatory upon a local board of health to issue a license after the approval of the State department of public health.

*Order sustaining demurrer affirmed.*
*Final decree affirmed.*