Brassard, J.
The Town of Burlington (“the Town”) brought this action against Lynette’s Limousine Service, Inc. (“Lynette’s”) and William and Lynette Bragel, seeking a declaratory judgment and injunctive relief prohibiting the defendants from operating a business office within the town for the purpose of operating or causing the operation of vehicles for hire; prohibiting Lynette’s from parking, garaging, or storing any vehicles available for hire in the town; prohibiting officers and employees of Lynette’s from driving or using any vehicles for hire within the town; and finding Lynette’s liable to the Town for $100.00 for each day that it violates these orders. The defendants responded with a counterclaim seeking that the Court order the Town to grant the renewal of a livery license to Lynette’s; declare that the Taxicab Regulations of the Town are invalid; declare specifically that Division 3 of the Taxicab Regulations are invalid; and order the Town to pay damages, costs, and attorneys fees. The matter is before the Court on the Town’s motion for summary judgment on the counterclaims.[2] For reasons stated, the motion is denied.
BACKGROUND
For the purposes of this motion, the following facts are undisputed:
Lynette’s is a limousine service with a regular place of business at 97 Cambridge Street in Burlington. Lynette Bragel is the president, treasurer, and clerk of Lynette’s. William Bragel is the vicepresident of Lynette’s.
*87 Division Two, Section 3 of the Town’s Taxicab Regulations (“the Regulations”) states: “No vehicle shall be driven, operated, or caused to be operated as a vehicle for hire without a license first having been obtained for that vehicle from the Board of Selectmen.” Section 6 of the Regulations states: “The Board of Selectmen may upon receipt of an application, issue a license under such terms and conditions as they deem appropriate and in the public interest. The Board, in determining whether to issue a license, may consider the public demand for the proposed service, the effect of the proposed services upon relevant traffic and safety conditions, the character and financial responsibility of the applicant, the condition of the proposed vehicle, and any and all other relevant facts and circumstances ...” Section 7 provides that the licenses expire on the last day of every year.
Division 3 of the Regulations requires that each person operating such a vehicle obtain a permit from the Town. Section 17 states: “An applicant shall be granted a permit only if the Board of Selectmen determines that granting the permit is in the best interest of the public.” Section 18 provides that each permit expires on the last day of every year.
In 1994, Lynette’s applied for and received five vehicle licenses to operate a limousine service at 97 Cambridge Street in Burlington. In a letter dated November 7, 1994, David W. Owen, the Town Administrator, told Lynette’s to complete an application for a 1995 license before December 19, explaining that a Selectmen’s meeting on that date would be the last one before 1995, and operating a vehicle in 1995 without approval would be a violation of the Regulations.
On or about January 9, 1995, Lynette’s filed an application for five limousine licenses. In a letter dated January 18, 1995 Owen wrote to the defendants to inform them that at the January 17, 1995 meeting the Board of Selectmen (“the Board”) had voted to reject their application and had requested that the Town Counsel begin an enforcement action against Lynette’s for its continuing to operate unlicensed vehicles and failing to license 13 other vehicles that the Registry of Motor Vehicles had recorded as being registered in the Town.
Lynette’s attorney attempted to contact counsel for Burlington on January 20, 1995 and Owen on January 23, 1995 in an effort to secure a meeting with the Board to reconsider its decision to deny the renewal of the livery license. He spoke with the Town’s counsel on January 25, 1995, who told him that the Town “won’t slam the door in [Lynette’s] face.” He further stated that he would speak to Owen regarding placing the issue on the agenda of the Board for reconsideration. Lynette’s attorney spoke with the Town’s counsel again on January 27, 1995 regarding placing the matter on the Board’s agenda for reconsideration.
On January 28, 1995, Lynette’s received a letter from Owen dated January 26, 1995, stating that the Board had denied Lynette’s license renewal requests because of its continued operation of its livery service beyond the expiration of the five licenses, its failure to obtain license for 13 other vehicles which were registered in Burlington, its failure to attend to the requirement that drivers of licensed vehicles obtain permits, and because the town had received complaints about the conditions of Lynette’s cars and drivers. The defendants allege that these reasons were fabricated by Owen.
Lynette’s attorney spoke with the Town’s counsel that same day. The Town’s counsel informed him that the January 26 letter was a followup to the January 18 letter and should not be construed as a decision by the Town not to meet with Lynette’s for the purposes of reconsideration.
Lynette’s attorney spoke with the Town’s counsel on February 15, 1995, and was told that the Board’s next meeting would be on February 27,1995. Lynette’s attorney prepared and submitted on behalf of the defendants a letter to the Board on February 27, 1995 in support of reconsideration. The request for reconsideration was not placed on the Board’s agenda for the February 27, 1995 meeting. Lynette’s attorney was told by the chairman of the Board after the meeting that he would speak to the Town’s counsel about putting the reconsideration on the Board’s agenda.
The week prior to a Board meeting on March 13, counsel for Lynette’s attempted to put the reconsideration on the Board’s agenda, but was told that the request for reconsideration was too late for the Board to accommodate at the March 13 meeting.
Lynette’s attorney received letters from the Town’s counsel on March 23 and March 30,1995which set forth a number of questions to which Lynette’s was required to respond in order to obtain the Board’s consent to place the matter on the agenda. These included inquiries about whether Lynette’s was requesting a public hearing or that the Board informally discuss the license issue; whether new information would be forthcoming; and for which vehicles livery licenses were sought. Lynette’s attorney prepared and delivered to the Board written responses to these inquiries by letters dated March 24, 1995 and April 5, 1995, and also discussed them with the Town’s Counsel on April 5, 1995.
Lynette’s attorney spoke with the secretary of the Board on April 6, 1995 regarding documents that Lynette’s was required to submit prior to April 7,1995, in order to have the matter placed on the agenda for the April 10, 1995 meeting. Lynette’s attorney delivered these documents to the Board’s representative on the same day.
The matter was listed as a formal item on the Board’s agenda on April 10, 1995. A full and thorough discussion of the defendant’s application occurred at the Board meeting. Each member of the Board stated that he would not vote to grant Lynette’s request for renewal. In a letter dated April 14, 1995, Owen informed Lynette’s that the Board of Selectmen indi *88 cated that it was not favorably inclined to entertain Lynette’s license renewal requests. •
The Town subsequently filed an enforcement action against the defendants on April 26, 1995. The defendants responded -with the counterclaim currently before the court.[3]
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 500, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
The Town argues that the defendants failed to timely appeal the Board of Selectmen’s denial of their application, and is wrongly attempting such an appeal through Counts I, II, and III of their counterclaim to the Town’s enforcement action.
G.L.c. 40, §22 allows towns to make rules and orders for the regulation of vehicles. Neither it nor the Regulations provide for a method of appealing a decision made pursuant to the Regulations. G.L.c. 249, §4 states; “A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought . . . Such action shall be commenced within sixty days next after the proceeding complained of. . .”
The extraordinary writ of certiorari issues when no other adequate remedy is available. Cliff v. Board of Health of Amesbury, 343 Mass. 58, 60 (1961). The requisite elements for availability of certiorari are: “(1) a judicial or quasijudicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review.” Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 83 (1968). Under part 2 of this test, certiorari lies only where the petitioner has exhausted his administrative remedies. Id. at 84.
The interaction of counterclaims and statutes of limitations is governed by G.L.c. 260, §36, which states in relevant part: “The provisions of law relative to limitations of actions shall apply to a counterclaim by the defendant. The time of such limitation shall be computed as if an action had been commenced therefor at the time the plaintiffs action was commenced ...”
I find that the defendants’ administrative remedies were not exhausted until the Board heard Lynette’s motion to reconsider. Where, as here, there are no written procedures for appealing a decision by a Board, a party adversely affected by the decision is entitled to rely on assurances by the Board that it will reconsider the petition. The Board’s final action for the purpose of computing the deadline to file a writ of certiorari was therefore the date of the promised reconsideration. See Gudanowski v. Town of Northbridge, 17 Mass.App.Ct. 414, 419 (1984) (holding that the words “proceeding complained of’ in G.L.c. 249, §4 do not refer to the date that tax assessments were made or taxes billed, where the plaintiffs subsequently filed applications for abatement of the assessments). The Town brought its action within two months of this decision. The constructive filing date of the defendants’ counterclaims in the nature of certiorari was therefore also within the two months mandated by G.L.c. 249, §4. Because the defendants’ counterclaims were timely, I deny the Town’s motion for summary judgment.
ORDER
It is therefore ORDERED that the plaintiffs motion for summary judgment be DENIED.

The plaintiff brought this motion as a motion to dismiss. As I rely on matters outside the pleadings to make a determination, I treat it as a motion for summary judgment: In keeping with the requirements of Mass.R.Civ.P. 12(c) I gave an opportunity to all parties to submit additional material made pertinent by this treatment.

The defendants voluntarily agreed to drop Count IV of their counterclaim.