RAYCO INVESTMENT CORP. *vs.* BOARD OF SELECTMEN
OF RAYNHAM &. another.[1]

Bristol.   February 4, 1975. — July 22, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Zoning,* Amendment of by-law or ordinance, Trailer park.   *Sub-*
*division Control.   Trailer Park.   Municipal Corporations,* Ordi-
nances and by-laws.

With respect to land in a town the proposed use of which for a
     "trailer park" was allowable and which was shown on a plan
     endorsed "approval under the subdivision control law not .re-
     quired" by the town's planning board prior to the town's adop-
     tion of a by-law providing that "[t]he maximum number of out-
     standing trailer park licenses issued under G. L. Chapter 140, shall
     not exceed at any time the number of said licenses issued by the
     Board of Health, and in conformity with applicable zoning By-
     Laws, as of" a recent date, the new by-law constituted a "virtual
     prohibition" of use of the land for trailer park purposes, and if
     validly adopted as an amendment to the zoning by-law the pro-
     visions of G. L. c. 40A, § 7A, protected the land for three years
     from the restrictions imposed by the new by-law.   [388-390]
In view of the comprehensive fashion in which the zoning by-law of
     a town dealt specifically with the subject of trailer parks prior to
     the adoption of a by-law restricting the number of trailer park
     licenses which could be issued, the new by-law necessarily mod-
     ified the earlier zoning by-law and was an amendment thereof
     and not an exercise of the town's general police power, and if
     the new by-law was not adopted in compliance with the pro-
     cedural requirements imposed by G. L. c. 40A, §§ 6 and 7, it
     was invalid and could not defeat an application for a trailer park
     license.   [390-395]

---

[1] Board of Health of Raynham.

BILL IN EQUITY filed in the Superior Court on March 2, 1974.

The suit was heard by *Griffin, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Thomas W. Callahan* for the plaintiff.

*Paull M. Cushman,* Town Counsel, for the Board of Selectmen of Raynham & another.

REARDON, J. This is a bill for declaratory relief under G. L. c. 231A in which the plaintiff seeks a declaration concerning the effect of a purported town by-law on its right to operate a mobile home park on property located in the town of Raynham. The Superior Court judge dismissed the bill after issuing "Findings, Rulings and Order for Decree," whereupon the plaintiff brought this appeal. The case was submitted on a statement of agreed facts, which can be summarized briefly.

The plaintiff is the owner of a parcel of land in Raynham in an area which at all material times has been zoned for "general use," that is, "land which is not zoned at this time." Sometime prior to October 14, 1971, the plaintiff's predecessor in title submitted to the town's planning board a plan with respect to that parcel. An exhibit indicates that on October 14 the planning board indorsed the plan with the notation, "approval under the subdivision control law not required." See G. L. c. 41, § 81P. Four days later, on October 18, 1971, the town voted to adopt a by-law (the 1971 by-law) limiting the number of licenses which could be issued for trailer parks. The 1971 by-law reads in its entirety as follows: "The maximum number of outstanding trailer park licenses issued under G. L. Chapter 140, shall not exceed at any time the number of said licenses issued by the Board of Health, and in conformity with applicable Zoning By-Laws, as of October 1, 1971." The statement of agreed facts does not disclose the procedure by which the town purported to adopt the 1971 by-law other than

to state that it was subsequently approved by the Attorney General's office in January, 1972. It is agreed by the parties that prior to the 1971 by-law operating a "trailer park" would have been an allowable use of the land in question.

On or about November 1, 1972, the plaintiff submitted to the town board of health an application for a license to operate a trailer park on the plaintiff's parcel of land. On or about November 10, 1972, town counsel informed the plaintiff that the board of health would not set a date for a hearing on the application, citing as the reason the existence of the by-law limiting the maximum number of trailer park licenses to those outstanding as of October 1, 1971.

The principal issue argued by the parties is the applicability of the second paragraph of G. L. c. 40A, § 7A, as appearing in St. 1965, c. 65. That paragraph provides: "When a plan referred to in section eighty-one P of chapter forty-one [i.e., a plan which does not require planning board approval under the subdivision control law] has been submitted to a planning board and written notice of such submission has been given to the city or town clerk, the use of the land shown on such plan shall be governed by applicable provisions of the zoning ordinance or by-law in effect at the time of the submission of such plan . . . for a period of three years from the date of endorsement by the planning board that approval under the subdivision control law is not required . . . provided that a city or town may, in the manner prescribed in this chapter, increase the number of permitted uses of any land shown on such a plan." The judge rejected the plaintiff's claim of protection under this statute, ruling that the 1971 by-law was "a valid exercise of the police power of the Town, and it is not to be construed as an amendment to the zoning by-law." We hold that the judge's ruling was erroneous, and that the 1971 by-law cannot be relied on to defeat the plaintiff's 1972 application for a trailer park license.

1. We have had recent opportunity to construe the second paragraph of § 7A, which governs cases in which the plan submitted does not require planning board approval under the subdivision control law. In *Bellows Farms, Inc.* v. *Building Inspector of Acton,* 364 Mass. 253, 260 (1973), the court referred to the statute as protecting the landowner "against the elimination of or reduction in the kinds of uses which were permitted when the plan was submitted to the planning board." In that case, however, there was no doubt that the provisions in question were amendments to the existing zoning by-law of the town, and the issue was whether these new zoning provisions restricted the "use" of the plaintiffs' property within the meaning of § 7A. Other decisions construing § 7A have similarly involved what were unquestionably amendments to zoning by-laws. *Smith* v. *Board of Appeals of Needham,* 339 Mass. 399 (1959). *McCarthy* v. *Board of Appeals of Ashland,* 354 Mass. 660 (1968). *Vazza* v. *Board of Appeals of Brockton,* 359 Mass. 256 (1971). *Nyquist* v. *Board of Appeals of Acton,* 359 Mass. 462 (1971). In the present case, by contrast, the defendants contend that the 1971 by-law did not constitute an amendment to the zoning by-law but rather was adopted under the separate police power of the town. As mentioned, the record is bare as to the manner in which the 1971 by-law was acted upon, though it was asserted at argument by town counsel that the strict procedures required by The Zoning Enabling Act for adoption of an amendment to the zoning by-law were not complied with. See G. L. c. 40A, §§ 6, 7.

Given the absence of information in the record as to whether the 1971 by-law was adopted as an amendment to the zoning by-law in accordance with the technical requirements of the enabling act, we are forced to approach this case from two directions. First, we consider the possibility, contrary to the town counsel's assertion, that the 1971 by-law was adopted as an amendment to the zoning by-law. Were that the case there would be

no doubt that G. L. c. 40A, § 7A, bears on the applicability of the 1971 by-law to the plaintiff's property. As argued by the defendants, however, a question would remain as to whether the protection afforded by § 7A against changes in the "use of the land" is broad enough to encompass the type of change brought about by the 1971 by-law. We turn now to a discussion of that question.

In arguing that § 7A does not cover the plaintiff's situation, the defendants rely on *Bellows Farms, Inc.* v. *Building Inspector of Acton, supra.* It was there pointed out that where plans are submitted which do not require approval under the subdivision control law, only the second paragraph of § 7A applies. Consequently, the protection afforded relates only to zoning amendments affecting the "use of the land" and does not encompass other changes in the zoning by-law. On this basis, the defendants contend that § 7A does not protect the plaintiff because the 1971 by-law does not preclude the use of the plaintiff's land for a trailer park. The defendants emphasize that the plaintiff may still be able to operate a trailer park if any one of the previous licensees ceases operating.

This argument represents a misreading of the *Bellows Farms* case. The amendments to the zoning by-law involved in that case had imposed new limitations on the permissible intensity of apartment units on the plaintiffs' land and had also required that use of the site for multiple dwelling units be subject to prior approval of the site plan by the board of selectmen. One consequence was to reduce the number of allowable units on the site from 435 to 203. The court concluded that the amendments applied to the plaintiff's land notwithstanding the plaintiffs' claim of protection under G. L. c. 40A, § 7A. In so ruling, the court emphasized that these changes in the zoning by-law "did not constitute or otherwise amount to a total or virtual prohibition of the use of the

locus for apartment units." *Id.* at 260. The court further observed that the amendments did not "impede the reasonable use of the plaintiff's land for apartment unit purposes." *Id.* at 261.

The facts in the instant case contrast sharply with the circumstances in the *Bellows Farms* case. There is nothing in the record to suggest that any one of the holders of existing trailer park licenses in the town intends to cease operating in the near future. It is conceivable that one such licensee could fail to receive a renewal of his license at the end of the year under G. L. c. 140, § 32B, but that possibility is speculative at best. Thus it would be unrealistic to deny that the 1971 by-law constitutes at the least a "virtual prohibition" of the use of the land for trailer park purposes and also "impede[s] the reasonable use of the . . . land" for those purposes. Accordingly, we conclude that if the 1971 by-law was adopted as an amendment to the zoning by-law in compliance with the procedural requirements of the enabling act, the provisions of G. L. c. 40A, § 7A, apply so as to protect the plaintiff from the restrictions imposed by the 1971 by-law.[2]

2. The alternative possibility is that the defendants in fact did not comply with the procedural requirements of The Zoning Enabling Act. This circumstance is alleged by the defendants in arguing that § 7A is inapplicable to the plaintiff because § 7A protects only against changes in the zoning by-law and the 1971 by-law was an exercise of the police power, not the zoning power. We turn, then, to consideration of this theory advanced by the defendants.

---

[2] There is no dispute that the plaintiff's attempt to obtain a trailer park license came within three years of indorsement of the plan as "approval . . . not required," as specified in the statute. Nor is it argued by the defendants that the expiration of the three-year period during the pendency of this litigation precludes the plaintiff from relying on the protection of § 7A after the decision of this appeal.

Authority to regulate trailer parks in Massachusetts has generally been derived from one of two sources. The first is G. L. c. 140, §§ 32A-32Q, which require the licensing of any "mobile home park" operated in the Commonwealth. Under G. L. c. 140, § 32B, the town board of health acts as the licensing body and is authorized to adopt rules and regulations to aid the enforcement of the licensing provisions. This rule making power is not restricted to the adoption of rules relating to public health.[3] *Gillam* v. *Board of Health of Saugus,* 327 Mass. 621, 623 (1951). *Cliff* v. *Board of Health of Amesbury,* 343 Mass. 58, 62 (1961). The licensing statute does not preempt the field, however, so that the regulation of trailer parks has also been upheld based on the zoning power delegated to municipalities by the State as a second source of authority. *Granby* v. *Landry,* 341 Mass. 443, 445-446 (1960). *Manchester* v. *Phillips,* 343 Mass. 591, 595 (1962).

The defendants attempt to justify the 1971 by-law on still another basis; that is, as an exercise of the town's general police power. There is considerable support for the proposition that trailer parks are subject to regulation under the police power apart from specific exercises of

---

[3] There is some argument by the defendants that the 1971 by-law can be justified as an exercise of the power delegated by G. L. c. 140, § 32B, to make rules and regulations concerning the licensing of mobile home parks. However, § 32B grants that rule making power to the board of health of the town, not to the town itself. The board of health took no independent action in this case but rather has deferred to the town's decision to impose a limit on the number of mobile home parks by voting to adopt the 1971 by-law. The defendants appear to suggest that we might construe the by-law as a board of health regulation, inasmuch as § 18 of the board's mobile home regulations states that "[a]ny town by-law or other town regulation greater than the above listed requirements shall supercede any or all of these requirements." This regulation, however, seems to us to do no more than acknowledge the principle that G. L. c. 140, § 32B, which authorizes the board's regulations, does not preempt the field of trailer park regulations but rather leaves to the town substantial authority to impose further restrictions on the operation of trailer parks. See *Granby* v. *Landry,* 341 Mass. 443, 446 (1960).

the zoning power.[4]   *Village House, Inc.* v. *Loudon,* 114 N. H. 76 (1974).   *Napierkowski* v. *Gloucester,* 29 N. J. 481 (1959).   Rathkopf, Zoning and Planning (3d ed. 1974), c. 17, at p. 17-1.   Hodes and Roberson, The Law of Mobile Homes (3d ed. 1974) § 2.3.   See *Cliff* v. *Board of Health of Amesbury, supra; Manchester* v. *Phillips, supra* ("A town has power by its zoning by-law, and by other by-laws, to regulate trailers and mobile homes.").   In Massachusetts a town's police power may be based on the statutory delegation of power under G. L. c. 40, § 21, or on the town's independent home rule power under art. 89, § 6, of the Amendments to the Constitution of the Commonwealth.   See *Marshal House, Inc.* v. *Rent Review & Grievance Bd. of Brookline,* 357 Mass. 709, 717 (1970); *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 357-360 (1973).

Whether or not a by-law limiting the maximum number of trailer park licenses might in some circumstances be grounded in the town's police power apart from the zoning power, we nonetheless conclude that in this instance the by-law must be viewed as a zoning regulation.   It is apparent that the nature and effect of the 1971 by-law is that of an exercise of the zoning power. First, we take notice of the fact that similar by-laws have been adopted in the past by municipalities as zoning by-laws.   For example, see *Selectmen of Charlton* v. *Girard,* 359 Mass. 755 (1971); *Plainfield* v. *Hood,* 108 N. H. 502 (1968).   There seems little doubt that the 1971 by-law could be viewed as within the scope of the town's zoning power.   See *Granby* v. *Landry,* 341 Mass. 443, 445-446 (1960).

---

[4] The zoning power is, of course, merely one category of the more general police power, concerned specifically with the regulation of land use. *Leahy* v. *Inspector of Bldgs. of New Bedford,* 308 Mass. 128, 132 (1941). *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 593 (1949). McQuillin, Municipal Corporations (3d ed. 1965) § 25.10.

It is also significant that prior to the adoption of the 1971 by-law the town's *zoning* by-law dealt specifically with the subject of trailer parks.[5]  Under § II (1) of the "Trailer By-Law," "[n]o house trailer shall be located in the Town of Raynham except as hereinafter provided." Section II (2) then prescribes conditions and requirements for approval of a trailer park by the town board of health.  There is no limit on the maximum number of trailer parks in the town under the regulations.  It is evident that this portion of the zoning by-law purported to cover this subject in a comprehensive fashion and it follows that the 1971 by-law necessarily modified the earlier by-law.  See Hodes and Roberson, The Law of Mobile Homes (3d ed. 1974) § 7.3 at p. 200.  Thus, considering the substance of the 1971 by-law and its relation to the preexisting zoning plan, the 1971 by-law ought to be considered as an amendment to the zoning by-law.  See McQuillin, Municipal Corporations (3d ed. 1965) §§ 25.10, 25.53.

A further consideration which leads us to this conclusion is that were we to adopt the defendant's theory the assorted protections contained in The Zoning Enabling Act could in many instances be circumvented, thereby defeating the purpose of the statute.  For example, just as the town purports to limit the number of mobile home parks within its borders under its police power, so another town might want to limit the number of apartment buildings in the town, perhaps as a health regulation to protect the town's water supply or sanitation facilities. Under the theory advanced by the defendants, the latter measure could be viewed as outside the scope of The

---

[5] Reproduced in the record in this case is a document entitled, "Procedure By-Laws and Zoning By-Laws, Town of Raynham, Massachusetts," which was Exhibit A of the statement of agreed facts.  The document is divided into two sections, the second of which bears the heading, "Zoning By-Laws," and which includes what is called the "Trailer By-Law," beginning on p. 18.  The "Trailer By-Law" is referred to in the statement of agreed facts as a "zoning by-law."

Zoning Enabling Act if not adopted strictly as a zoning regulation. The problem with this approach is that it views the municipal police power in a vacuum, whereas the law is clear that a municipality's "independent police powers . . . cannot be exercised in a manner which frustrates the purpose or implementation of a general or special law enacted by the Legislature in accordance with . . . [art. 89, § 8, of the Amendments to the Constitution]." *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs*, 363 Mass. 339, 360 (1973). See art. 89, § 6, of the Amendments to the Constitution of the Commonwealth; G. L. c. 43B, § 13; G. L. c. 40, § 21. For an extensive discussion of this principle, see *Bloom* v. *Worcester*, 363 Mass. 136, 147-157 (1973). In light of this consideration we are all the more convinced that in the circumstances of this case the 1971 by-law should be viewed as subject to the provisions of The Zoning Enabling Act.

Since for purposes of this discussion it is assumed that the procedural requirements imposed by G. L. c. 40A, §§ 6 and 7, for the adoption of zoning amendments have not been complied with, our conclusion that the 1971 by-law is subject to the enabling act takes on great significance. Under G. L. c. 40A, § 6, zoning by-laws may "be changed by amendment, addition or repeal, but only in the manner hereinafter provided," that is, by following the technical procedures outlined therein. If the statutory requirements are not met, existing zoning regulations remain unaffected by the purported amendment. *Leahy* v. *Inspector of Bldgs. of New Bedford*, 308 Mass. 128, 133 (1941).

3. Assuming then that the procedures for amending zoning by-laws were not followed, the 1971 by-law is invalid and cannot be relied on to defeat the plaintiff's application for a trailer park license. If on the other hand the procedures were in fact complied with, or if the defects in procedure were trivial (*Hallenborg* v. *Town*

*Clerk of Billerica,* 360 Mass. 513, 518 [1971]), then, as discussed above, the provisions of G. L. c. 40A, § 7A, operate to protect the plaintiff from application of the 1971 by-law to its property. In either case, its application for a trailer park license is unaffected by the 1971 by-law. The final decree dismissing the plaintiff's bill for declaratory relief is therefore reversed. A judgment is to be entered that the plaintiff's application for a trailer park license is unaffected by the Raynham by-law of October 18, 1971.

*So ordered.*