A. LAWRENCE LOVEQUIST & another,[1] trustees, *vs.*
CONSERVATION COMMISSION OF DENNIS.

Barnstable. May 8, 1979 — August 21, 1979.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Municipal Corporations*, By-laws and ordinances, Conservation commission, "Home rule." *Zoning*, Wetlands. *Administrative Law*, Agency, Hearing, Evidence. *Wetlands Protection Act. Due Process of Law*, Taking of property.

A town's wetlands protection by-law, which gave the town conservation commission the power to permit or disallow "any removal, dredging, filling, or altering of subject lands within the town" for the stated purpose of protecting the local wetlands, was not a zoning measure, and, therefore, it was not required that the by-law be promulgated in accordance with the requirements of G. L. c. 40A. [12-14]

A town's wetlands protection by-law, which gave the town conservation commission the power to permit or disallow "any removal, dredging, filling, or altering of subject lands within the town" for the stated purpose of protecting the local wetlands, did not conflict with the Commonwealth's Wetlands Protection Act, G. L. c. 131, § 40. [14-16]

In an action seeking relief from a decision of a town conservation commission denying the plaintiffs' application to construct an access road over an old cranberry bog, there was no merit to the plaintiffs' contention that the commission was biased in its consideration of their application. [16-17]

[1] Harold Gursha. The plaintiffs are trustees of the Gurshall Realty Trust.

A decision by a town conservation commission, acting pursuant to the town's wetlands protection by-law, to disapprove an application for the construction of an access road over an old cranberry bog was based on substantial evidence that permanent groundwater loss would result from the construction. [17-19]

A decision by a town conservation commission, acting pursuant to the town's wetlands protection by-law, to disapprove an application for the construction of an access road over an old cranberry bog, thereby nullifying the landowners' plan for a subdivision, did not constitute an unconstitutional taking of the landowners' property. [19-21]

CIVIL ACTION commenced in the Superior Court on December 30, 1975.

The case was heard by *Keating*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*James M. Falla* for the plaintiffs.

*Gregor I. McGregor* (*Richard T. Rook* with him) for the defendant.

*Gregor I. McGregor*, for Massachusetts Association of Conservation Commissions, amicus curiae, submitted a brief.

*Norman P. Cohen*, Town Counsel, & *Russ V. V. Bradley, Jr.*, for the town of Lexington, amicus curiae, submitted a brief.

*J. Douglas Murphy*, Assistant Town Counsel, for the town of Barnstable, amicus curiae, submitted a brief.

*Michael P. Last, Harlan M. Doliner & Carolyn Roundey*, for the Environment Committee of the Boston Bar Association, amicus curiae, submitted a brief.

*Francis X. Bellotti*, Attorney General, *Stephen M. Leonard & Malcolm Pittman*, Assistant Attorneys General, for the Commonwealth, amicus curiae, submitted a brief.

HENNESSEY, C.J.    In this case we review the decision of the conservation commission of the town of Dennis under a local wetlands protection by-law denying the plaintiffs' application to construct an access road over an old cranberry bog.  This action is brought for relief in the nature of cer-

tiorari pursuant to G. L. c. 249, § 4. See *Boston Edison Co.*
v. *Boston Redevelopment Auth.*, 374 Mass. 37 (1977). We
affirm.

We begin by summarizing the pertinent facts. The plain-
tiffs are the owners of a forty-acre tract of land on the north
side of the town of Dennis. Part of an area locally known as
"Simpkins Neck,"[2] the tract consists of approximately ten
acres of marshland, 3.93 acres of overgrown cranberry bog,
and twenty-six acres of wooded upland. The plaintiffs ac-
quired this land parcel-by-parcel over a period of approxi-
mately ten years at a total cost of $38,200.

It is the plaintiffs' desire to subdivide the upland located
on the Neck into house lots for single family residences. To
this end, the plaintiffs on July 11, 1975, filed with the con-
servation commission of the town of Dennis (commission) a
notice of intent to construct a road over adjoining marsh-
lands in order to facilitate service to this proposed subdivi-
sion. At the present time, an old dirt road which crosses
this area between the mainland and the Neck serves as the
only access to and from the subject parcel. The plaintiffs
consider this road inadequate, both in terms of construction
and design, to furnish access to the Neck even for a limited
use such as a single house.

By filing a notice of intent, the plaintiffs triggered com-
mission proceedings under G. L. c. 131, § 40, the Common-
wealth's Wetlands Protection Act, and under the town's
cognate by-law, art. 15.[3] Public hearings were held on

---

[2] The land is called a "neck" because it is an area of upland that extends
into the Chase Garden Creek marsh area and is separated from the "main-
land" by an overgrown cranberry bog.

[3] In pertinent part, art. 15 provides: "1. The purpose of this by-law is
to protect the foreshores and wetlands of the Town of Dennis by control-
ling activities deemed to have a significant effect upon wetland values, in-
cluding but not limited to the following: Public or private water supply,
groundwater, flood control, erosion control, storm damage, water pollu-
tion, fisheries, shellfish, wildlife, recreation, and esthetics. No person
shall remove, fill, dredge, or alter any bank, fresh water wetland, coastal
wetland, beach, dune, flat, marsh, meadow, bog, swamp, or lands
bordering on the ocean or on any estuary, creek, river, stream, pond or

July 24, 1975, and on various dates later in the year. On December 2, 1975, the commission denied the plaintiffs' application under art. 15 because it believed that the road construction would have a "detrimental impact on the environment of both subject and contiguous lands."[4]

In response to the commission's decision, the plaintiffs initiated this civil action in the Superior Court. After a hearing the judge issued an order remanding the matter to the commission for further hearings, introduction of new evidence, review and reconsideration by the commission, and preparation of a record in a form sufficient for judicial review. The court retained jurisdiction while directing

---

lake, or any land under said waters or any land subject to tidal action, coastal storm flowage, or flooding, other than in the course of maintaining, repairing or replacing, but not substantially changing or enlarging, an existing and lawfully located structure or facility used in the service of the public and used to provide electric, gas, water, telephone, telegraph and other telecommunication services, without filing written notice of his intention to so remove, fill, dredge or alter and without receiving and complying with an order of conditions and provided all appeal periods have elapsed. Such notice shall be sent by certified mail to the Dennis Conservation Commission, including such plans as may be necessary to describe such proposed activity and its effect on the environment. The same notice, plans and specifications required to be filed by an applicant under Massachusetts General Laws, Chapter 131, Section 40, will be accepted as fulfilling the requirements of this by-law. The said Commission, in its discretion, may hear any oral presentation under this by-law at the same public hearing required to be held under the provisions of said Chapter 131, Section 40, of the Massachusetts General Laws. . . .

"4. The Conservation Commission is empowered to deny permission for any removal, dredging, filling, or altering of subject lands within the town if, in its judgment, such denial is necessary to preserve environmental quality of either or both the subject lands and contiguous lands. Due consideration shall be given to possible effects of the proposal on all values to be protected under this by-law and to any demonstrated hardship on the petitioner by reason of a denial, as brought forth at the public hearing."

Section 1 of art. 15 is directly modeled on the language of G. L. c. 131, § 40.

[4] At the same time, the commission disapproved a permit under G. L. c. 131, § 40. From this decision of denial, the plaintiffs filed a statutory appeal to the Department of Natural Resources (now the Department of Environmental Quality Engineering). That administrative appeal was still pending as of the time this case was argued.

that the commission complete hearings and file its decision with the court by August 12, 1977.

On July 29, 1977, further hearings on the plaintiffs' application commenced and, following two days of testimony, the commission again disapproved the proposed road construction. In its written decision, the commission found that the road, if constructed, would create serious groundwater and water pollution problems. The commission determined, in addition, that these effects would be compounded by whatever sewage flow might be generated by the proposed subdivision. On January 5, 1978, the case was returned to the Superior Court for a hearing on the merits, and, on February 3, 1978, judgment was entered dismissing the original complaint and upholding the decision of the commission. The case was transferred to this court on our own motion.

In this appeal the plaintiffs advance four basic arguments: (1) that the Dennis wetlands protection by-law, art. 15, is void under the Home Rule Amendment because it is inconsistent with both The Zoning Enabling Act, c. 40A, and the Commonwealth's Wetlands Protection Act; (2) that the commission was biased in its consideration of the plaintiffs' application for a construction permit; (3) that the commission lacked substantial evidence to justify disapproval of the proposed access road; and (4) that such denial constituted an unconstitutional taking of the plaintiffs' property. Because we find all of these contentions unpersuasive, we conclude that the commission's order is to be affirmed.

1. *Home Rule.* Under the terms of the Home Rule Amendment, "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court . . . and which is not denied, either expressly or by clear implication, to the city or town by its charter." · Art. 2, § 6, of the Amendments to the Constitution of the Commonwealth, as

amended by art. 89 of the Amendments. See *Beard* v. *Salisbury*, 378 Mass. 435 (1979); *Anderson* v. *Boston*, 376 Mass. 178 (1978); *Bloom* v. *Worcester*, 363 Mass. 136 (1973). Relying on this constitutional provision, the plaintiffs assert that the Dennis wetlands protection by-law is unlawful because it conflicts with two separate chapters of the General Laws. We consider each claim on its own.

First, the plaintiffs maintain that, because art. 15 regulates land use, it is by nature a zoning enactment. Since G. L. c. 40A preempts the manner and method in which a municipality may exercise its zoning power, *Canton* v. *Bruno*, 361 Mass. 598 (1972), the plaintiffs conclude that art. 15 circumvents the Legislature's mandate inasmuch as the procedures either directed or implied by the by-law are not identical to those of the zoning statute. Observing that this court has approved other towns' wetland by-laws as exercises of the zoning power, e.g., *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512 (1976); *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221 (1972), cert. denied, 409 U.S. 1108 (1973); *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519 (1970), the plaintiffs urge the generalized view that all local wetlands enactments are zoning measures and must comply with the procedural protections of G. L. c. 40A.[5]

We reject this argument. We do not consider all ordinances or by-laws that regulate land use to be zoning laws, and we do not view art. 15 to be a zoning enactment. The thrust of art. 15, we discern, is to give the town conservation commission, a body created under G. L. c. 131, § 40, the power to permit or to disallow "any removal, dredging, fill-

---

[5] These protections, the plaintiffs claim, consist of: (1) the requirement of a planning board hearing on any proposed zoning by-law or amendment, G. L. c. 40A, § 5; (2) the requirement that such by-laws be adopted by a two-thirds vote of the town meeting, *id.*; (3) the right of appeal to an impartial board of appeals for the purpose of obtaining either a special permit or a variance, G. L. c. 40A, §§ 12 and 14; and (4) the right of review de novo in Superior Court, G. L. c. 40A, § 17.

ing, or altering of subject lands within the town" in accord with the stated purpose of protecting the local foreshores and wetlands. In its present form, and particularly as applied in this case, art. 15 is comparable to an earth removal enactment, a kind of general by-law expressly permitted by statute. G. L. c. 40, § 21 (17).[6] Notably adoption of such by-laws or ordinances has been determined valid by this court even in those instances where the town has a zoning by-law. *Beard* v. *Salisbury*, 378 Mass. 435, 439 n.7 (1979); *Byrne* v. *Middleborough*, 364 Mass. 331, 334 (1973). It is, of course, clear that nonzoning earth removal enactments need not comply with the prescriptions stated in G. L. c. 40A, since the requirements of the zoning laws are applicable *only if* a town chooses to adopt a zoning by-law. Cf. *Canton* v. *Bruno*, 361 Mass. 598, 603 (1972).

Apart from this consideration, however, we should be reluctant to classify the instant by-law as a zoning measure for the reason that art. 15 manifests neither the purpose nor the effects of a zoning regulation. The Dennis by-law does not prohibit or permit any particular listed uses of land or the construction of buildings or the location of businesses or residences in a comprehensive fashion. On its face it does not deny or invite permission to build any structure. It does not regulate density. Instead, it specifies that permission be obtained from the commission based on factual circumstances surrounding individual applications.

Significantly, art. 15's impact on land use follows only from its dominant purpose to protect wetlands values — e.g., public or private water supply, groundwater, flood control, erosion control, storm damage, water pollution, fisheries, shellfish, wildlife, recreation, and esthetics. These

---

[6] Under this direct statutory grant municipalities are empowered to enact by-laws or ordinances "[f]or prohibiting or regulating the removal of soil, loam, sand or gravel from land not in public use in the whole or in specified districts of the town. . . ." See *Beard* v. *Salisbury*, 378 Mass. 435 (1979); *Byrne* v. *Middleborough*, 364 Mass. 331 (1973); *Butler* v. *East Bridgewater*, 330 Mass. 33 (1953); Dawson, Earth Removal and Environmental Protection, 3 Envt'l Aff. 166 (1974).

wetland values, moreover, do not include air pollution, noise, demands for sewers and other municipal services or the character of the community and the compatibility of nearby land uses, all typical of the concerns usually reflected in the zoning process.

The instant case, moreover, is readily distinguishable from the facts in *Rayco Inv. Corp.* v. *Selectmen of Raynham*, 368 Mass. 385 (1975), the case on which the plaintiffs ground their contention that by-laws regulating land use can be enacted only pursuant to The Zoning Enabling Act. In *Rayco* this court held that a town by-law limiting the total number of trailer park licenses in the town was to be viewed as a zoning regulation due to the historical context in which it had been enacted. We observed in that case that for a considerable number of years the town had been governed by a zoning by-law which "purported to cover [the] subject [of trailer parks] in a comprehensive fashion," and we thus determined that the challenged by-law was most appropriately viewed as an amendment to that enactment. *Id.* at 393. In the case presently before us, no evidence has been introduced that there is or ever has been a comprehensive zoning by-law governing the wetland activities proposed by the plaintiffs. *Rayco*, moreover, nowhere suggests that municipal regulations that simply overlap with what may be the province of a local zoning authority are to be treated as zoning enactments which must be promulgated in accordance with the requirements of G. L. c. 40A. Because we think it manifest that art. 15 is not a zoning regulation, the holding of *Rayco*, is inapposite to this case.

Turning to the plaintiffs' second claim of State-local conflict, we likewise detect no inconsistency between art. 15 and the provisions of the Commonwealth's Wetlands Protection Act, G. L. c. 131, § 40. We find unconvincing the plaintiffs' assertion that, because G. L. c. 131, § 40, does not give any express or implied powers to a municipality to adopt wetlands by-laws outside of a zoning framework, general by-laws concerning wetlands protection contravene the wetlands statute. It is our opinion that nothing in G. L.

c. 131, § 40, intimates such a result and that § 6 of the Home Rule Amendment suggests the contrary.

Yet, the plaintiffs allege additionally that art. 15 is inconsistent with the wetlands statute because the by-law gives the conservation commission specific power to prohibit outright any disturbance of covered lands, whereas G. L. c. 131, § 40, merely allows conservation commissions to "impose such conditions as will contribute to the protection of the interests" described in the statute. This, in our view, does not represent a conflict between State and local law. Since the language of the by-law parallels that of the statute, it appears plain that art. 15 furthers — rather than derogates from — the legislative purpose embodied in the Wetlands Protection Act. *Bloom* v. *Worcester*, 363 Mass. 136, 156 (1973). Indeed, we have specifically held that G. L. c. 131, § 40, sets forth minimum standards only, "leaving local communities free to adopt more stringent controls." *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 526 (1970). While we recognize that *Golden* was a consideration of a zoning by-law, we can conceive of no reason why the Wetlands Protection Act would be any more frustrated by a by-law enacted pursuant to town powers outside the zoning authority. Moreover, we take notice of the fact that pursuant to regulations promulgated under § 40, conservation commissions for almost five years have had a prerogative to prohibit construction which might injure wetland areas. Regulations under the Wetlands Protection Act, Regs. 2.27, 6.3, 9 Code Mass. Regs. 337A, 337H and 337N (November 11, 1974).

Finally, the plaintiffs assert that the by-law is inconsistent with the wetlands statute because the local enactment does not parallel § 40's provisions for administrative and judicial review of commission decisions. Under the statute, but not the by-law, there is an administrative review before the Department of Environmental Quality Engineering as well as judicial review in accordance with G. L. c. 30A. This disparity, we think, does not rise to the level of conflict. We observe that a person aggrieved by a commission

decision under the by-law is in no way deprived of rights of review. Such person has exactly the same remedy under art. 15 as is available under any other nonzoning by-law — an action in the nature of certiorari under G. L. c. 249, § 4. The fact that administrative appeals to the State may not be available under art. 15, does not make the by-law inconsistent with the Wetlands Protection Act.

2. *Bias.* We next turn to the plaintiffs' argument that they were denied procedural due process because the commission was predisposed against them. In support of this claim, the plaintiffs point to a "mandate" from the town of Dennis calling for the preservation and acquisition of natural wetlands[7] and to the fact that a member of the commission, for purposes of the case, stepped down from the board in order to advocate actively that the construction permit be denied.[8] Neither of these incidents, we believe, rendered the commission proceeding constitutionally infirm.

We observe initially that the plaintiffs have produced no evidence regarding the effect this "mandate" might have had in influencing the commission's determination. There is no indication that any of the commissioners were guided in their determination by the hope of pecuniary or other personal gain. It is significant that the commission, for its part, expressly stated that it did not consider as a basis for its final decision any dedications of open space in the area, any town acquisition program, or the desirability of acquiring this parcel. We see no hint that such was not the case. Moreover, we note that the commission welcomed the submission of alternative proposals by the plaintiffs. In brief, nothing in the record disturbs the assumption that the com-

---

[7] The area proposed for the road construction is part of a wetland area over which the town, since 1965, has empowered the commission to accept gifts and make purchases as funds allow. There was no evidence presented that any such property has been so obtained.

[8] In order to present the case against the plaintiffs' application, the chairman of the commission, Dr. Norton Nickerson, excused himself from the commission during these proceedings on this matter.

missioners acted as men of conscience and intellectual discipline, who fairly judged this particular controversy on the basis of its own circumstances. *Skelly Oil Co.* v. *FPC*, 375 F.2d 6, 18 (10th Cir. 1967), modified on other grounds sub nom. *Permian Basin Area Rate Cases*, 390 U.S. 747 (1968). See K.C. Davis, Administrative Law of the Seventies § 12.01 (1976).

There is even less force to the claim of bias predicated on the fact that a member of the commission, Dr. Norton Nickerson, championed the case against the plaintiffs' application. As the plaintiffs concede, Dr. Nickerson did not participate in either the commission's deliberations or in its ultimate decision. Thus, assuming his opposition to the proposed construction, Dr. Nickerson's abstention from participation should be viewed, if anything, as helpful, rather than prejudicial, to the plaintiffs' cause. Compare Comment, Disqualification of Federal Judges for Bias or Prejudice, 46 U. Chi. L. Rev. 236 (1978). Clearly no constitutional rights were impaired by his action. Rather, the record indicates that the plaintiffs received a full and fair hearing before the commission. Indeed, even where an agency itself combines investigative and judicial functions, this fact alone is seldom basis for relief under the due process clause. *Pangburn* v. *Civil Aeronautics Bd.*, 311 F.2d 349, 356 (1st Cir. 1962).

3. *Substantial Evidence.* A more serious question is raised by the plaintiffs' claim that the commission's decision disapproving their application to develop a marshland access road was not based on substantial evidence of anticipated wetland injury resulting from the road construction. Past cases have amply demonstrated the necessity that local planning authorities base their decisions on reasoning relevant to the evidence presented before them. See *MacGibbon* v. *Board of Appeals of Duxbury*, 369 Mass. 512, 516 (1976) (*MacGibbon III*); *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635 (1970) (*MacGibbon II*); *MacGibbon* v. *Board of Appeals of Duxbury*, 347 Mass. 690 (1964) (*MacGibbon I*). However, in the matter presently

before us, we think that the commission's conclusion was fully supported by "substantial evidence" in the record. See *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152, 157 (1978); *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. 570, 574 (1974); *Bunte* v. *Mayor of Boston*, 361 Mass. 71, 74 (1972); *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968).

The principal reason the commission offered for its denial of the plaintiffs' application was the deleterious effect that such construction would have in reducing the groundwater supply. It was disclosed during the proceeding that the proposed road would be constructed on fill, with all the natural peat first removed, along a length between 100 and 280 feet and about 80 feet wide. Excavation was to take place below the water table of the marsh and would strip away 6,000 cubic yards of peat to a depth of five feet along the length of the road.[9] The excavated peat would be replaced by 9,000 to 12,000 cubic yards of sand and gravel, substances having an admittedly greater porosity than that of peat. An estimated twenty per cent of the wetland would be removed.[10]

On the basis of these facts, the commission could properly find that the result of replacing the relatively impermeable peat with more permeable materials, through which groundwater could flow, would be a permanent groundwater loss for the town. All parties agreed that the water source on the plaintiffs' property is part of a much larger and important groundwater supply located in underground reservoirs throughout the adjoining area. Thus, the effect of the excavation could be aptly analogized, as one of the witnesses before the commission so stated, to "taking the plug out of a bathtub." Having held that the protection

---

[9] The amount of peat excavated was said to be equivalent to 300 standard 20-yard dump truck loads.

[10] There was also evidence introduced before the commission indicating that the dumping of fill where peat formerly lay could lead to significant groundwater pollution.

of groundwater is a valid public interest, *Turnpike Realty Co. v. Dedham*, 362 Mass. 221, 227-229 (1972),[11] we think the commission did not act improperly in denying the plaintiffs permission for the proposed road construction.[12]

4. *Unconstitutional taking.* Lastly, the plaintiffs challenge the commission's action on the due process ground that the denial of a road construction permit deprived them of property without compensation. Prohibited from developing the proposed road, their plans for a subdivision, and their hopes for a sizable profit, are effectively nullified, they claim. This potential loss of income, it is asserted, warrants due process protection. We disagree.

There can be no doubting the proposition that property may be subject to reasonable restraints and regulation in the public interest. *Commonwealth v. Alger*, 7 Cush. 53, 85-86 (1851). Indeed, governmental decisions may deprive an owner of a beneficial property use — even the most beneficial such use — without rendering the regulation an unconstitutional taking. *Penn Cent. Transp. Co. v. New York*

---

[11] Restriction of wetlands development for the protection of water supplies has increasingly been upheld by courts in other jurisdictions. See, e.g., *United States v. D'Annolfo*, 474 F. Supp. 220 (D. Mass. 1979); *Candlestick Properties, Inc. v. San Francisco Bay Conservation & Dev. Comm'n*, 11 Cal. App. 3d 557 (1970); *Brecciaroli v. Commissioner of Environmental Protection*, 168 Conn. 349 (1975); *Potomac Sand & Gravel Co. v. Governor of Maryland*, 266 Md. 358 (1972); *Sibson v. State*, 115 N.H. 124 (1975); *J.M. Mills, Inc. v. Murphy*, 116 R.I. 54 (1976); *Just v. Marinette County*, 56 Wis. 2d 7 (1972).

Moreover, it has been observed that an increasing number of communities in the Commonwealth face critical water supply shortages created by increased consumption, degradation of existing supplies, and lack of additional supplies. Report of the Special Commission Relative to Determining the Adequacy of Water Supply in the Commonwealth, 1979 House Doc. No. 5596. See generally Dawson, Protecting Massachusetts Wetlands, 12 Suffolk U. L. Rev. 755 (1978).

[12] The plaintiffs also maintain that the commission erred by considering the groundwater effects of the proposed subdivision in its determination. Since we find the evidence relating to road construction sufficient in itself to support the commission's decision, and because the record indicates that the commission likewise regarded this evidence as adequate to justify its determination, we do not reach this question.

*City,* 438 U.S. 104, 123-128 (1978). *Goldblatt* v. *Hempstead,* 369 U.S. 590, 592 (1962). *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221, 234-235 (1972). *Burlington* v. *Dunn,* 318 Mass. 216, 222 (1945). Cf. *United States* v. *564.54 Acres of Land,* 441 U.S. 506 (1979); *Malone* v. *Commonwealth,* 378 Mass. 74 (1979). What may be characterized as forbidden takings are those governmental actions which strip private property "of all practical value to them or to anyone acquiring it, leaving them only with the burden of paying taxes on it." *MacGibbon III, supra* at 517, quoting *MacGibbon II, supra* at 641. See also *Pennsylvania Coal Co.* v. *Mahon,* 260 U.S. 393 (1922); *Commissioner of Natural Resources* v. *S. Volpe & Co.,* 349 Mass. 104 (1965).

Viewed accordingly, it is clear that no taking has occurred. We observe at the outset that the plaintiffs themselves presented little evidence of projected loss. The only support this claim finds in the record is a hearsay statement by one of the plaintiffs that he had been offered $250,000 for the property should construction permits be approved. More significantly, however, the commission found, and the trial judge concurred, that even without an improved access road there were other practical uses available for the property: a single family house, a camp, or commercial cranberry production.[13] Compare *MacGibbon III, supra.* No evidence was offered suggesting that these were not viable alternatives.

Furthermore, a recent appraisal of the plaintiffs' property revealed its value to be $122,000. Hence, should the plaintiffs immediately dispose of the property they stand to gain over 200 % profit, considering that they purchased the parcels for a sum of $38,200. Whatever loss of additional profit may be implicated by the commission's denial of a construction permit is insufficient to constitute an unlawful taking. *Turnpike Realty Co.* v. *Dedham,* 362 Mass. 221,

---

[13] The commission expressly indicated its willingness to consider proposals relating to the upgrading of the existing access road in order to assist the development of these uses.

236 (1972). *Steel Hill Dev., Inc.* v. *Sanbornton*, 469 F.2d 956, 963 (1st Cir. 1972).

5. *Summary.* For the reasons outlined above, the order of the commission was correct. Accordingly, the judgment is affirmed.

*So ordered.*