ROBERT J. SPENLINHAUER, trustee,[1] vs. TOWN OF BARNSTABLE & another.[2]

No. 10-P-113.

Barnstable. October 8, 2010. - August 18, 2011.

Present: McHugh, Rubin, & Hanlon, JJ.

*Practice, Civil,* Summary judgment. *Zoning,* Validity of by-law or ordinance, Parking requirements. *Municipal Corporations,* By-laws and ordinances.

In a civil action brought in the Superior Court seeking to invalidate a provi-
sion of a town ordinance limiting overnight off-street parking in areas
zoned for single-family residences, as well as a cease and desist order is-
sued by the town against the plaintiff and a fine (authorized by the ordinance)
that was imposed by the town on the plaintiff, a judge erred in directing
the entry of judgment in favor of the defendant town, where the parking
provision of the ordinance amounted to a zoning regulation, rather than a
matter for regulation by general bylaws enacted in the exercise of the
town's police power, and the provision was not promulgated in accordance
with the requirements of the G. L. c. 40A. [137-142]

CIVIL ACTION commenced in the Superior Court Department on August 15, 2007.

The case was heard by *Richard F. Connon,* J., on motions for summary judgment.

*Thomas Frisardi* for the plaintiff.

*T. David Houghton* for the defendants.

McHugh, J. By ordinance, the town of Barnstable (town) imposes limits on overnight off-street parking in areas of the town zoned for single-family residences. The plaintiff, Robert J. Spenlinhauer, lives in such a district and, preferring to exceed the limits, regularly does so. After he ignored a cease and desist order, the town imposed a fine the ordinance authorized. In response, Spenlinhauer filed an action in Superior Court seeking

[1]Of the C. C. Canal Realty Trust.
[2]Board of health of Barnstable.

declaratory and other relief invalidating the ordinance, the order, and the fine. A judge of the Superior Court, however, granted the town's motion for summary judgment and ordered entry of judgment declaring that the ordinance is valid and enforceable. Spenlinhauer appeals, and we reverse.

*Background.* The essential facts contained in the summary judgment record are not in material dispute. On June 1, 2006, the town adopted a "Comprehensive Occupancy" ordinance (ordinance). The ordinance's stated purpose was to "guide growth in accordance with the local comprehensive plan, so as to promote beneficial and convenient relationships between the natural resources of the [t]own and its inhabitants, to address nutrient management and other environmental, health and safety issues resulting from overcrowding in residential dwellings." To carry out those purposes, the substantive provisions of the ordinance limit the number of people who may occupy a single-family dwelling. Of particular concern here, the provisions also limit the number of motor vehicles that may be parked overnight, offstreet and in the open outside a single-family dwelling to "two motor vehicles for the first bedroom . . . and one motor vehicle per bedroom thereafter." The ordinance also commits enforcement to "the Building Commissioner . . . the Board of Health . . . or the police."

Adoption of the ordinance was preceded by two public hearings, one on May 11, 2006, and the other a few weeks later on June 1. At both hearings, town officials and members of the public expressed concerns about preservation of the health and "character" of single-family residential neighborhoods and about the impact parked cars had on that character. Indeed, the discussion at the May 11 hearing was introduced by an assistant town manager who said that the evening's discussion

> "was the beginning of a discussion that the community needs to have — work-force housing and community character. The staff [of the town manager's office] approached this as a problem solving effort. The staff is talking about being good neighbors and community character. It is about a small 2-3 bedroom house with a small patch of grass — the American dream. The [worst] problem is in

the poorest census tracts. The housing crisis has created a market to sell houses that can be rented to a large number of people."

He was followed by the town attorney, who said that the problem was "cyclical" and noted that "in the early 1990s, the problem was college party houses." The third town official to speak said that

> "there are concerns about the quality of life. There are too many people living in houses, too many cars parked in yards and on streets, [twenty-four] hour activity and noise. What goes on in one lot impacts the life in the next lot. The town has no rules to address this. The state sanitary code, which the health department can enforce, has limits on the number of bedrooms. However, there is a need to update definitions in the codes from how they were written [fifty] years ago."

Not a single comment at that hearing focused on health hazards associated with outdoor parking of motor vehicles either in the daytime or overnight. The same is true of the June 1 hearing, when comments of similar tenor were expressed and the ordinance was adopted.

Spenlinhauer lives in Barnstable in a two-bedroom, single-family home on Sea View Avenue that has been in his family for nearly fifty years. He acquired the property from his mother in 1994 and has occupied it with members of his immediate family ever since. Spenlinhauer is in compliance with the ordinance insofar as the number of occupants is concerned. The formula in the ordinance permits him to park no more than three vehicles outdoors on his property overnight.[3] Spenlinhauer, however, regularly exceeds the number of permitted vehicles and has done so for as long as he has owned the house.[4] The record reveals that most are late-model vehicles and that Spenlinhauer maintains the house and surrounding grounds in good condition.

---

[3]Spenlinhauer's property also contains a three-bay garage where he can park three more vehicles.

[4]In fact, Spenlinhauer pays excise taxes on eighteen vehicles registered to him at the Sea View Avenue address. Nothing in the record, however, suggests that all eighteen have ever been there at one time.

On June 27, 2007, after receiving complaints from neighbors about Spenlinhauer's parking practices, the town's director of public health issued an order requiring that he cease and desist from exceeding the vehicle parking limit. The order stated that six vehicles had been observed in his driveway and that he would be fined, as the ordinance provided, one hundred dollars for each day of violation if he did not stop. Spenlinhauer appealed the order to the board of health, which upheld the order and imposed a one hundred dollar fine. Shortly thereafter, Spenlinhauer commenced this action in the Superior Court to challenge the validity of the ordinance essentially on grounds that it amounted to an attempt to impose a zoning regulation without following the procedures required by G. L. c. 40A. The town countered with an assertion that the ordinance was a perfectly valid health regulation. Ultimately, a judge of the Superior Court issued a detailed memorandum and order in which he agreed with the town's position and ordered entry of judgment declaring that the ordinance was valid. A judgment to that effect soon entered and precipitated this appeal.

*Discussion.* On those facts, our analysis begins with the familiar. We review allowance of motions for summary judgment de novo, see *District Attorney for the N. Dist.* v. *School Comm. of Wayland*, 455 Mass. 561, 566 (2009), and, in doing so, view the record in the light most favorable to the non-moving party. See *Augat Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991).

As noted, the record contains no contested material issues of fact. Thus, we are faced with the essentially legal question that divided the parties below and continues to divide them here, namely whether the parking limitations contained in the ordinance are invalid because they are zoning regulations and not a matter for regulation by general bylaws that a town may enact in the exercise of its police powers.[5] The distinction between zoning and other regulations is not an empty formality, for valid zoning measures can be implemented only by following the procedures spelled out in G. L. c. 40A, and the town does not contend that those procedures were followed here. Moreover, changes

---

[5]The town does not dispute that the ordinance was enacted as a general bylaw.

in zoning ordinances protect some prior existing uses, see G. L. c. 40A, § 6, but general ordinances typically do not.

As in other contexts, the line dividing matters a town can regulate only through zoning ordinances and those it may regulate through general ordinances is not always clear. Nevertheless, the Supreme Judicial Court's decision in *Rayco Inv. Corp.* v. *Selectmen of Raynham*, 368 Mass. 385 (1975), provides a framework for determining where the line is located in particular cases.

*Rayco* involved a bylaw passed by the town of Raynham that limited the number of trailer park licenses the town could issue. *Rayco, supra* at 386-387. The record did not disclose whether, in adopting the bylaw, Raynham had followed the procedures for adoption of zoning bylaws then contained in c. 40A, though at oral argument Raynham town counsel said that it had not done so. Nevertheless, the record's lack of clarity on the point led the court to analyze the results that would obtain if the town had followed the c. 40A procedures and those that would obtain if it had not. The court concluded that if the town had adopted the bylaw without following the procedures contained in c. 40A, thus using its general police powers instead of its zoning authority, the bylaw was invalid.[6] In reaching that conclusion, the court observed that the town had regulated trailer parks exclusively under its zoning bylaw before it adopted the bylaw in question. That being the case, the court viewed the town's new approach to trailer park licenses as substantially undercutting "the assorted protections contained in" c. 40A. *Ibid.* For example, the court said,

> "just as the town purports to limit the number of mobile home parks within its borders under its police power, so another town might want to limit the number of apartment buildings in the town, perhaps as a health regulation to protect the town's water supply or sanitation facilities. Under the theory advanced by the defendants, the latter measure could be viewed as outside the scope of The Zoning Enabling Act if not adopted strictly as a zoning regulation."

---

[6]The court also concluded that the plaintiff would prevail if the bylaw had been adopted in accordance with the procedures c. 40A contained. See note 8, *infra.*

*Id.* at 393-394. Using the town's police power in that fashion, the court continued, would run counter to the principal that the police power "cannot be exercised in a manner which frustrates the purpose or implementation of a general or special law enacted by the Legislature." *Id.* at 394, quoting from *Board of Appeals of Hanover* v. *Housing Appeals Commn. in the Dept. of Community Affairs*, 363 Mass. 339, 360 (1973).[7]

Application of the analysis contained in *Rayco*[8] leads us to conclude that at least the parking component of the challenged ordinance is a matter for regulation through the town's zoning power, not through its use of a general ordinance.[9] First of all,

---

[7]The court also took "notice" that other municipalities had used zoning bylaws to impose similar limitations on trailer park licenses and cited cases in which municipalities had taken that approach. *Rayco, supra* at 391-392. Later, however, the court appeared to view what other municipalities had done as a matter for evidence, not judicial notice. See *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 14 (1979). Here, there was no evidence regarding how other towns regulated off-street parking in single-family residence zones.

[8]In his decision, the motion judge also applied the analysis contained in *Rayco*. In doing so, however, the judge read the opinion to hold that regulation of land use through the zoning process is only required when the resulting regulation amounts to a "virtual prohibition" on use of the regulated land. Because application of the parking bylaw at issue here resulted in no such prohibition, the judge concluded that the ordinance was valid, even though Barnstable had not followed the procedures set out in G. L. c. 40A. The town makes the same argument here. But the discussion of a "virtual prohibition" in *Rayco* was aimed at a different target. The record in *Rayco* did not reveal whether the bylaw there in question had been enacted as a zoning bylaw after the town followed the G. L. c. 40A procedures or whether it had been enacted through use of the general police power without following those procedures. The record's deficiency led the court to look at the result that would obtain under either scenario. That look led the court to conclude that the plaintiff prevailed in both cases. If the bylaw had been passed as a zoning measure, then the plaintiff would be entitled to the grandfathering provisions of what was then G. L. c. 40A, § 7A, now c. 40A, § 6, because the bylaw amounted to a "virtual prohibition" of a use that was permissible when the plaintiff received an "approval not required" endorsement on a subdivision plan. *Rayco, supra* at 389-390. If the measure had been passed as a general ordinance, then it was invalid because it should have enacted as a zoning ordinance. The court's discussion of "virtual prohibition," therefore, contains no principle applicable to this case.

[9]Spenlinhauer argues that the entire ordinance amounts to an improper use of the power to regulate zoning matters by enacting general ordinances. But parking is at the heart of Spenlinhauer's actual claim, and the ordinance contains a severability provision. We need not, therefore, reach portions that do not directly impact parking.

before adopting the ordinance, the town regulated off-street parking through its zoning bylaws. Chapter 240 of the town's code is entitled "Zoning" and contains the zoning bylaw. Article VI of chapter 240 is entitled "Off-street Parking Regulations." Four pages in length, article VI regulates off-street parking at almost any conceivable location and use, including attached dwelling units, guesthouses, hotels, nursing homes, hospitals, warehouses, retail stores, office buildings, restaurants, bowling alleys, tennis courts, and many more. Suffice it to say the existence of "Off-street Parking Regulations" in the town's zoning bylaws shows that the town has historically regulated off-street parking through its zoning bylaws, not its general ordinances or bylaws.

The town argues that the detailed and extensive regulations contained in article VI are not dispositive because those regulations expressly exempt single-family homes like Spenlinhauer's. Even if that were so,[10] the exemption does not create a hole the town can fill through enactment of general ordinances. First of all, in addition to article VI, which is specifically devoted to parking, virtually every other section of the bylaw that prescribes requirements for a particular zoning district contains some parking provisions. The bylaw as a whole, then, clearly evinces the town's historical reliance on the zoning bylaw to deal with parking. Second, although discussion by town officials and citizens at the meetings that attended adoption of the ordinance focused to some extent on the increased sewage likely to flow from overcrowded housing and the public health impact the increase might have, nothing at those meetings linked parking

---

[10]It is not clear that all single-family homes are in fact exempt from the regulation. Article VI of the zoning bylaw begins with § 240-48, which says that "the purpose of this article [is] that all new, expanded or intensified uses within the [t]own provide adequate off-street parking." The next section says that "no use shall be intensified, except for single-family detached dwellings, without providing adequate off-street parking as provided herein." Section 240-24.1.5(C)(1), which governs single-family residential districts, says that "[a]ll development within the [single-family] [d]istrict shall comply with the applicable parking . . . requirements contained in [a]rticle VI, §§ 240-48 through 240-58." It is not clear, therefore, whether "new" or "expanded" dwellings in a single-family district, as opposed to dwellings that qualify as an "intensified" use, are exempt from the parking requirements set forth in article VI.

to any public health issue. Insofar as parking was concerned, the focus of discussion centered instead on the impact that dense parking had on the character and quality of the town's neighborhoods, precisely the target at which the town's zoning ordinance is so thoroughly and comprehensively aimed. Against that backdrop, the town's attempt to use its general ordinance power to regulate off-street parking undercuts "the assorted protections contained in" c. 40A, in the process frustrating the purposes for which c. 40A was enacted. See *Rayco, supra* at 393-394.

*Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7 (1979), on which the town relies, is not to the contrary. *Lovequist* involved a decision by the Dennis conservation commission that prohibited a developer from building a road over marshland within the town's borders. In its decision, the commission relied on a town bylaw that prohibited construction activities affecting wetlands without obtaining the commission's permission. *Lovequist, supra* at 9-10 & n. 3. The town had not followed the procedures specified in c. 40A when it enacted the bylaw, and relying on *Rayco*, the developer argued that the bylaw constituted an invalid zoning regulation. The Supreme Judicial Court held, however, that *Rayco* was "readily distinguishable," principally because "no evidence [had] been introduced that there is or ever has been a comprehensive zoning by-law governing the wetland activities proposed by the" developer. *Id*. at 14. The court noted that conservation commissions, acting pursuant to G. L. c. 131, § 40, and regulations promulgated thereunder, had exercised for several years "a prerogative to prohibit construction which might injure wetland areas." *Id*. at 15. Exercise of that prerogative was not inconsistent with *Rayco*, for nothing the court said in that case suggested that "municipal regulations that simply overlap with what may be the province of a local zoning authority are to be treated as zoning enactments which must be a promulgated in accordance with the requirements of G. L. c. 40A." *Id*. at 14. Finally, the court said that it was

> "reluctant to classify the instant by-law as a zoning measure for the reason that [it] manifests neither the purpose nor the effects of a zoning regulation. The Dennis by-law does

not prohibit or permit any particular listed uses of land or the construction of buildings or the location of businesses or residences in a comprehensive fashion. On its face it does not deny or invite permission to build any structure. It does not regulate density. Instead, it specifies that permission be obtained from the commission based on factual circumstances surrounding individual applications."

*Id.* at 13.

Here, by contrast, there is a comprehensive bylaw regulating parking in the town. The subject of parking has not been committed by statute or regulation to another town board or agency. The bylaw does not simply focus on individual applications for activities in which a landowner wishes to engage but instead regulates parking on all land in single-family residence zones. Finally, although the town claims that the ordinance was enacted as a health measure pursuant to the town's general police power, there is on this record no nexus between public health and overnight off-street parking. Indeed, it is difficult to conjure a menace to public health that arises as the sun sets over unoccupied vehicles parked on the grounds of the house where their owners reside. *Lovequist,* in sum, is not controlling.

The judgment is vacated. The case is remanded to the Superior Court for entry of a judgment (a) declaring that § 59-3(B) of the town of Barnstable code is invalid because it was not promulgated in accordance with the requirements of G. L. c. 40A; (b) vacating the order of the board of health of Barnstable dated June 27, 2007, limiting the plaintiff to parking three vehicles outdoors on his property overnight; and (c) vacating the August 3, 2007 order of the board of health of Barnstable imposing on the plaintiff a fine of one hundred dollars.

*So ordered.*