The plaintiffs, trustees of Baker Avenue Trust (trust), filed a complaint in the Superior Court seeking certiorari review of a decision of the conservation commission of Kingston (commission) denying the plaintiffs' notice of intent (NOI) requesting an order of conditions to build a single-family home on lot 105 located on Cole Avenue in Kingston (property).[4] On the plaintiffs' motion for judgment on the pleadings, the judge concluded that the commission's decision was supported by substantial evidence, was not arbitrary or capricious, and was not based on an error of law. He therefore denied the plaintiffs' motion and issued a judgment dismissing the complaint and affirming the commission's decision.[5] We affirm.
Background. In 2007, the plaintiffs filed an NOI with the commission requesting an order of conditions to build a single-family home on the lot. After a public hearing in 2009, the commission denied the plaintiffs' request, concluding that it met neither the performance standards set forth in the Wetlands Protection Act (WPA), see G. L. c. 131, § 40, nor the town of Kingston's (town's) wetlands protection bylaw (wetlands bylaw) and the regulations promulgated thereunder (regulations). That same year, the Department of Environmental Protection (DEP) issued a superseding order of conditions, approving construction under the WPA. In 2011, a judge of the Superior Court vacated the commission's decision and remanded the matter for reconsideration. Public hearings regarding the lot reopened on February 19, 2013, and closed on August 6, 2013.
On remand, the commission unanimously denied the request for a second time, for four reasons. First, the commission found that the proposal did not meet the performance standards stated in § 6.01 of the regulations because the construction phase of the project, and a portion of the house and much of the yard, would impinge on the twenty-five-foot buffer zone, and would thereby contravene the regulation's interest in protecting the wetland values specified in the regulation.[6] Second, the commission stated that there were no adequate conditions that could protect the wetlands, because the proposed house would be 13.6 feet away from an intermittent, perennial stream and thus could adversely impact water quality.[7] Third, the commission found that the plaintiffs failed to meet their burden of proof under § 4.01 of the regulations, because they did not demonstrate that the lot was not "significant" to the regulation's interests, or that the proposed work would contribute to the protection of such interests, by a preponderance of the credible evidence. Finally, the commission concluded that denial of the NOI would not constitute an unconstitutional taking, because (1) the lot is one parcel out of a larger purchase of land which contains several developments, and (2) the land had value as an open space or part of a separate, proposed development.[8]
Discussion. The plaintiffs' primary argument on appeal is that the judge improperly relied on an incorrect assertion, made by the town during the hearing on the plaintiffs' motion for judgment on the pleadings, that the plaintiffs had subdivided property on Cole Avenue and thus "knowingly created a lot of questionable value." On appeal, the commission acknowledges that the lot was subdivided by others, and that the representation made to the judge was made in error.
However, this error, and the judge's reliance on it, is of no moment on appeal, where we review the record afresh. " 'We review de novo [a] judge's order allowing a motion for judgment on the pleadings under [ Mass. R. Civ. P. 12 (c), 356 Mass. 754 (1974) ].' In an action in the nature of certiorari challenging a wetlands permit decision made by a conservation commission pursuant to a local by-law, our review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law" (citations omitted). Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733 (2018). Therefore, the error is of no consequence to our review.
Without citation to authority or specific reference to the record, the plaintiffs also contend that the judge's decision lacked evidentiary support. The two-sentence statement to this effect in the plaintiffs' appellate brief does not rise to the level of appellate argument. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975); Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 540 (2014) ; Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011).
Nonetheless, we have reviewed the record with care and conclude that there has been no error. The plaintiffs assert that there was substantial evidence to support granting the NOI, and that the commission was required, under the wetlands bylaw and the regulations, to grant a waiver. However, the plaintiffs have failed to show that the commission's decision was unsupported by the evidence, arbitrary, capricious, or based on an error of law.
Article 9 of the wetlands bylaw places the burden of proof on the permit applicant and specifically provides that the "[f]ailure to provide adequate evidence ... supporting a determination that the proposed work will not harm the interest protected by this bylaw shall be sufficient to cause the Commission to deny a permit." Section 4.01 of the regulations further provides that
"[a]ny person who files a written application for a permit ... to perform work within an Area Subject to Protection has the burden of demonstrating to the Conservation Commission by a preponderance of the credible evidence submitted by qualified experts in support of all matters asserted by the applicant (1) that the area is not significant to the protection of any of the interests identified in the By-Law, or (2) that the proposed work will contribute to the protection of the interests identified in the By-Law, or (3) that the presumption set forth in these regulations concerning the Area Subject to Protection is not valid."
The first and third factors are not before us. The plaintiffs did not challenge the validity of the presumptions set forth in the regulations designating the protected areas or the buffer zone, and no argument has been made on appeal that the presumptions are invalid or that the area is not significant. We therefore treat the commission's enforcement of the buffer zone requirements as a legitimate exercise of its authority.
We turn then to the second factor, that is, whether "the proposed work will contribute to the protection of the interests in the By-Law." The commission held hearings, visited the lot, and reviewed the plaintiffs' plan to reduce the size of the house and yard, eliminate land grading, install a siltation fence, and fill and replicate the wetlands. The commission concluded that the plaintiffs failed to meet their burden of proof under the regulations because the proposal placed the house within 13.6 feet of a stream, within the twenty-five-foot undisturbed buffer zone, and would have disturbed over 420 feet within the buffer zone, thereby adversely affecting the town's interest in erosion control, wildlife, wildlife habitats, wetland plants, wetland plant habitats, fisheries, the quality of ground and surface water, and the prevention of pollution. The commission's decision was fully supported and was not arbitrary or capricious. See Rodgers v. Conservation Comm'n of Barnstable, 67 Mass. App. Ct. 200, 205-206 (2006), quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981) ("A finding is based upon substantial evidence if 'experience permits the reasoning mind to make the finding; [i.e.,] whether the finding could have been made by reference to the logic of experience' "); T.D.J. Dev. Corp. v. Conservation Comm'n of N. Andover, 36 Mass. App. Ct. 124, 128 (1994) ("A decision is not arbitrary and capricious unless there is no ground which 'reasonable [persons] might deem proper' to support it" [citation omitted] ).
The plaintiffs' final contention is that the commission was required to grant a waiver because the application of the regulations resulted in an unconstitutional taking. The commission concluded that there was no taking because "[t]he parcel is just one out of a much larger purchase of land, portions of which have been developed or are proposed for development. In addition, ... there is likely more value to the land as open space and/or as part of a separate, and active, proposed development, that includes the subject lot, than the provided Real Estate Agent opinion of value."
Section 2.09(A)(3) of the regulations authorizes the commission to waive a provision of the regulations, including the twenty-five-foot buffer zone requirement, if "the applicant has presented credible documentary evidence proving that ... the variance is necessary to accommodate an overriding community, regional, state or national public interest, or that it is necessary to avoid a Permit that so restricts the use of property as to constitute an unconstitutional taking without compensation." However, the plaintiffs did not produce any evidence that the development was necessary to accommodate an overriding community, regional, State, or national public interest.
Nor did the plaintiffs meet their burden to show the regulation rose to the level of a taking. See Gove v. Zoning Bd. of Appeals of Chatham, 444 Mass. 754, 763, 765 (2005) ; Lovequist v. Conservation Comm'n of Dennis, 379 Mass. 7, 19-20 (1979). "There can be no doubting the proposition that property may be subject to reasonable restraints and regulation in the public interest.... What may be characterized as forbidden takings are those governmental actions which strip private property of all practical value to them or to anyone acquiring it, leaving them only with the burden of paying taxes on it." (Quotations and citations omitted.) Lovequist, 379 Mass. at 19-20. The property was purchased for $15,000. The only evidence in the record regarding diminution in value was a realtor's letter which gave a stated value of $85,000 to $95,000 as a buildable lot, but stated it was worth no more than $1,000 as "open space."
The realtor's letter set forth an estimate, not an appraisal. It did not consider other alternative uses. See Gove, 444 Mass. at 765. Without objection, the commission took administrative notice of a pending alternative application for the use of the lot in conjunction with another parcel owned by the plaintiffs.[9] As the commission noted, "[t]he separate proposal includes using a portion of [the lot] for a stream crossing, for a wetland replication to mitigate for wetland filling for the stream crossing, for utilities, for a stormwater detention basin, and for grading for another single family house, different from that proposed as part of this remand." Thus, the plaintiffs, on this record, retain "more than a token interest in [their] property." Id. at 764 n.17.
The commission's conclusion that the plaintiffs failed to satisfy their burden of proof was not arbitrary, capricious, or an error of law. See id.
Judgment affirmed.

Lot 105 is further identified as shown on assessors map 58.

Certiorari review is limited "to correct[ing] errors of law in administrative proceedings where judicial review is otherwise unavailable." State Bd. of Retirement v. Bulger, 446 Mass. 169, 173 (2006). See G. L. c. 249, § 4.

During the pendency of the case, the town increased the size of the buffer zone, but the commission applied the twenty-five-foot limit in place at the time the NOI was filed.

The plaintiffs offered to mitigate the harm by filling the wetlands and replicating them elsewhere. The commission stated that the plan was inappropriate because it would create a greater disturbance within the buffer zone. Notably, the DEP also conditioned its superseding order of conditions on the removal of this portion of the plan.

The plaintiffs purchased the parcel of land, including lot 105, in 1987. The plaintiffs still own lots 108 and 109.

Cf. G. L. c. 30A, § 11 (5), governing administrative notice by State agencies, which provides as follows: "Agencies may take notice of any fact which may be judicially noticed by the courts, and in addition, may take notice of general, technical or scientific facts within their specialized knowledge. Parties shall be notified of the material so noticed, and they shall be afforded an opportunity to contest the facts so noticed. Agencies may utilize their experience, technical competence, and specialized knowledge in the evaluation of the evidence presented to them."